v. LFZ, et al. Good morning. May it please the Court, my name is Bill Gantz. I represent the appellants, two gentlemen, Walter Cronin and Ronald Anderson. On May 9, 2011, Ronald Anderson and Walter Cronin were very surprised. Prior to that, they had a case, a commercial case for $2.5 million. They had an expert. There had been extensive briefing on a motion for summary judgment. They were set for a trial in front of the trial court starting May 16, for a six-day schedule through the 23rd. They also had an expert. They learned on that day, when they came to court, that their lawyer, unbeknownst to them, had failed to file a pre-trial memorandum on time and had failed on May 2 to provide full disclosure of exhibits that would be used at trial. By May 11, they were shocked because their case had been dismissed with prejudice as a sanction under Rule 219C for the conduct of Mr. James McHugh, who was their trial lawyer at the time. But one thing Mr. McHugh did do on May 10, the day prior to the dismissal, was he did file a pre-trial memorandum. And it disclosed all the witnesses, it disclosed the exhibits, it disclosed the theories, it disclosed pretty much everything you would normally have in a pre-trial memorandum. The problem was, it was late. On May 11, there was argument on a motion to dismiss, or basically a motion for sanctions under Rule 219, that the defendants in the case brought. And except for the arguments of Mr. James McHugh that day on May 11, that the witnesses that he had disclosed, albeit belatedly, were identical to the witnesses that were already on the appellants list. That the exhibits were identical or produced by the defendants. He fell on the sword, but other than his argument that all those things were in the pre-trial memorandum, there is nothing in the record. There's nothing in the order of May 11, there's nothing in the transcript of May 11, there's nothing in the record of proceedings on September 15 when my firm came in and I was engaged to bring a motion to vacate. There is no analysis at all of what is in the May 10 pre-trial memorandum. It's undisputed, I believe, that all the witnesses were disclosed and identical. They had all been deposed. There was an adequate disclosure and deposition of the expert who was disclosed. It's undisputed. But the problem here is that the trial court dismissed the case basically because it felt that the actions of Mr. McHugh, and I'm not here to defend his actions, he didn't comply with the order. He didn't properly file a pre-trial memorandum. But Rule 219C is a rule that exists for when things go wrong like this. And the problem here, and the points of error that we raised, is that the court made an assumption that the case could not go to trial on May 16, which we believe was erroneous. There was no analysis, even though the trial court acknowledged that it had received this May 10 memorandum, had acknowledged it. Nowhere in this entire record did she delve into the witnesses and make any specific findings of prejudice. Also missing from the record is any type of transcript or bystanders report regarding what happened on the date that the final trial conference was scheduled. And I believe the motion to compel was brought on that day. Do you know whether there was any consideration of who the witnesses were going to be or what the issues were on that particular day? On May 9? May 9. May 9 was the day of the initial pre-trial conference and it was supposed to have been filed on May 6. The pre-trial memo, but the conference was set for the 9th. Correct. There was no discussion, because the pre-trial memorandum and the witnesses were not filed until May 10, I don't believe there's anything in the record that suggests there was a discussion about what he would file the next day. So there was no disclosure on, or discussion I believe on the 9th, of who the witnesses would be or what the exhibits would be. I hope I've answered your question. You have. Thank you. Thank you. The first problem is the May 11, 2011 order itself. Rule 219C expressly requires that if you're going to impose a sanction under it, there has to be an express finding in the order. The judge shall specify the reasons and the basis for the sanction so imposed. There's nothing in the May 11 order to that effect at all. And there's a statement in the May 11 order that it's for the reasons and analysis of the court expressed in the court that day. But when we look at the May 11, 2011 proceedings, there's no discussion of any actual prejudice. There's no actual finding of any actual prejudice to the defendants, who are now the appellees in this matter. When we look at the record of September 15, again, there's no discussion of what was necessary or what was still needed to do in order to let the case go to trial on May 16. The order, the motion that was presented, was all based upon the orderly administration of justice and the discretion of the court to manage its own docket. But what's missing here, as required by Szymanowski, by Santiago, in virtually every case on the subject of 219, are actual findings of actual prejudice. And we submit that where the witnesses were identical, the documents were identical, there was no surprise as to what this case was about. There was a fully brief motion for summary judgment. The trial court acknowledged that it was essentially a one-issue case, and that is whether a partnership was formed or not formed based upon oral testimony and some documents that corroborated or didn't corroborate it. That was what this whole case was about. So what did happen on May 11 was that there were a lot of rhetorical claims of prejudice. You know, the defendants in the case said, well, this blew up my trial preparation. Or they said, this is creating costs beyond belief. They had no idea what theories on which the plaintiff intended to proceed. They were left essentially only with surmise as to the plaintiff's intentions. Well, that's just not demonstrated by the record. And there's no discussion anywhere in this record about the contents, except for Mr. McHugh stating that it's exactly the same stuff that's in the defendant's submission. There's no finding by the trial court. There's not even a question raised by the trial court asking counsel for the defendants, why can't you go to trial on May 16? What is it about the late disclosure, albeit late, now that it's late? What is the reason? Counsel never stood up and said, I can't go to trial on Monday because. Because I'm surprised by the witnesses? No, because they were all identical and on his list. Counsel indicated that there was an additional $3 million claim for unjust enrichment that was a surprise to them. They did. They did make that argument, although I think we indicated that that was pleaded in the complaint. There wasn't a cause of action for an accounting related to time periods after May. So I believe that the claim that was being made was there was a claim for $2.5 million up to May 2006. And then there was an action for an accounting afterwards to determine the damages. In addition, the damages that were claimed were timely submitted on May 2. There was the demonstrative exhibit that was submitted on a timely basis. That's an argument they make. I don't think, for the sake of argument, if that claim were untimely or not allowed or not disclosed or not indicated by the pleadings, there would be no problem with the court considering a sanction, which is actually expressed in 219, of striking a claim or striking a pleading or striking a part of a claim or a part of witnesses' testimony. But the fact that somebody raises a claim that another party says isn't allowed or is untimely is not a basis for dismissal of prejudice. The defendants really never argued, and they don't argue on appeal now, that it would have been impossible for them to go to trial on Monday. The other issue here is that I think the case law is very clear that actual prejudice must be found and that lesser sanctions must be considered. And Rule 219 itself expresses four or five. And I would submit that if court has discretion to fashion any particular lesser sanction than dismissal, that is appropriate under the circumstances. What isn't addressed anywhere by the trial court was, it's now May 11. Why can't we go to trial on May 16? What do you need, counsel, in order to proceed to trial on Monday? There was never that level of inquiry or basis. And when we look at cases like Szymanowski where the plaintiff basically destroyed certain evidence that the defendants said was a basis for dismissal, that case was reversed because the trial court did not find actual prejudice. They didn't delve into the specific situation. The defendants in Szymanowski had access to all of the same information. They had known about the particular destruction for a long time. And the trial court in that case, just because he understood the grave's decision, it's not related to this case, but because of another case, he felt compelled to dismiss the case. But he didn't make a finding of actual prejudice. In the Santiago case, that was a case in which the defendants claimed that they should be entitled to dismissal because the plaintiff used an improper name, a fraudulent name. And they suggested that because he used a fraudulent name, they would not know about witnesses or they wouldn't now be able to obtain records or information. Well, that wasn't enough, just the suggestion. They were required to demonstrate that some of that had actually occurred. So what we have here in this case, there are a lot of claims about rhetorical prejudice, like this is really inconvenient or this is blowing up my trial preparation, but there was never an affidavit filed seeking costs or even alleging that there were additional costs. There was never an affidavit saying they could not precede the trial. And the motion for sanctions in the trial court didn't even address the subject of lesser sanctions. But the court did say that she considered them and didn't find that they would be appropriate, or it would almost lead to the same result by precluding the claims. Yeah, the trial court, I'm sorry, on September 15th, when we argued the motion to vacate, the trial court indicated that I did consider the lesser sanctions. And her discussion on that was that she considered striking the claims, but I keep getting back to the same place. If I'm going to strike the claims, the case is going to get dismissed. But the problem is the trial court never said, well, why would you strike the claim? Why would you strike a witness? There was no cause to do so because there was no actual prejudice. The trial court could not have found that there was surprise in any of these witnesses. Every one of them was on the defendant's list. The trial court did not make any finding about actual prejudice as a result of the exhibits being advised on the 10th instead of the 6th. These were the documents that were produced, and the defendants had 254 exhibits. What could the trial court have done as an alternative to dismissing the case outright? Well, the trial court could have asked the defendants, do you need some more time for any reason? The trial court could have said to the plaintiff, because of what you've done and I now have to consider things after the 9th, I'm going to take one of your trial days away. The trial court could have considered whether any witness was a surprise. The trial court could have required the plaintiff to state specifically the order of witnesses who would be called on a specific day, which is something trial lawyers frequently do anyway. The trial court could have assessed costs. The trial court could have stayed the proceeding and told the plaintiff that you cannot have any damages after this date or you cannot have any prejudgment interest after this date. There was a panoply of things that the trial court could have done short of dismissing the case with prejudice, which is the ultimate and most severe sanction. And the failing here is in the analysis. The court did make a mention on the motion to vacate that it had considered lesser sanctions, but there's nothing in the record where they looked at the actual position that the parties and the court was in as a result of the May 10th disclosure. When you look at the cases, the appellees cite to a whole bunch of cases, and invariably in every one of them, one of the arguments we make is that the plaintiffs themselves, they're the parties, the appellants are the parties. They're blameless. There is no finding of any contumaciousness. There was never even a motion to compel or an order compelling anything prior to this. They're blameless. And what we see is in every one of the cases in which the appellees rely, the Link v. Wabash case, Sander, Harris v. Harris, Koppel, Higgins, Big Three, King, Gaydon, Sander, Guru Denham, Goforth, every case there is a pattern of disrespect for court orders. There are prior orders that have not been complied with for a long period of time. The cases we cite demonstrate that there is a situation. This is not the first time that a lawyer, unbeknownst to the parties, has shown up and not had their pretrial memorandum on file, or even the first case in which a lawyer has shown up or failed to show up for a pretrial conference. And there is case law on this subject. I mean, we cited to the Fedorenko case where the plaintiff's lawyer failed to appear three different times for a pretrial conference. That didn't support dismissal with prejudice. The Donner case, the plaintiff's counsel failed to appear for a pretrial conference. Conover-Smith, the same. We cited to a couple cases in other jurisdictions where there was the same result in our brief. Two cases I think bear mention here. One is the White. Counselor, your time has expired. I'm sorry? Your time has expired. Okay. You'll have time on rebuttal. Thank you. Counselor? Thank you, Your Honor. Justice, my name is David Ginelli, and I am here for the appellee in this case, Hockey and Company, two of whose partners are sitting next to me. When you listen to Mr. Gantz, you think of one thing. You think of a mulligan. You think of a do-over. You think of, if I had the chance, I could redo this and it would all be better. We could forget about what it is that happened. Were there other things that the court, Judge Novak, could have done? Most certainly so. We could have set the trial for a year later. That probably would have taken away some of the concerns, but not the majority of the concerns in regards to it. And, indeed, Justice, as you're sitting here, not as the trial court. You have all been trial judges. I have been before you as trial judges at one time or another, and you understand that what it is we're doing here is considering whether there was an abuse of discretion. Well, here, what was the prejudice to your client if a short continuance had been granted with some other sanction? Well, here is where the prejudice was, and this is in the record in regards to both the May and the September hearings before Judge Novak in regards to it. In the first instance in May, we were confronted without knowing anything and having a trial set. The court indicated it could not set a short continuance in regards to her docket in respect to it, and we were confronted with no pretrial order or memo from the plaintiff of any kind. Had we gone to trial on the 16th, we wouldn't know what it is that the plaintiff was going to do. There could not have been a short continuance in this case, Justice Hoffman, in the first instance, because the court didn't have a short continuance date in regards to it. And, of course, had it been a year later, there are many things that could have been done in regards to it, but that is not what the court here today is considering. The court is considering whether or not the judge's decision in this case was an abuse of discretion, given the fact that in December of 2011, she had set a very detailed final pretrial order in regards to what it is that needed to be done here. Well, the order itself wasn't detailed. The order entered gave dates. The standing order. That is correct. The standing order indicated various issues in regards to what it is that the court would do, and then in December, after the final settlement pretrial, the court issued a detailed order in regards to what it is that she wanted in respect to preparing the case for a fair trial. December 17, 2011, there was an order entered after the final settlement conference trial. But that only gave dates. That gave dates. That is correct. In regards to what it is that she expected. The standing order indicated what it is that needed to be in a final pretrial. Final pretrial memorandum. And indeed, to finish my answer to Justice Hoffman's question here in regards to the prejudice, at no time you heard Mr. Gant say, well, he then did file a final pretrial order that everybody agreed was compliant. Hogwash. It wasn't compliant, and it's in the record. All you need to do is to look at it to see that even then, days after the court indicated that she would entertain sanctions, they couldn't file a final pretrial that was compliant. There is a lengthy pretrial that was filed tardy. But there was no, as counsel indicated, there was no examination of that by the trial court. And I don't know that we as an appellate court can now look at that and say, not familiar with the case, what had been done before, where the prejudice resulted. Well, the prejudice resulted in this. You heard Mr. Gant say, well, he knew all the witnesses. The court's order required to indicate who the witnesses were who were going to be called and who could be called in regards to it. We didn't find anything about that in any final pretrial order, even the one that was filed late. There was an issue in regards to identifying exhibits. I didn't even know what the plaintiff's exhibits were even after they filed this pretrial order, Justice Rochford, because what they did is they said things, and this is in the record at RC 2050, that they were going to introduce composite correspondence between the parties for whole years. That is two days before the trial. That's what I was told they were going to do in terms of exhibits. Now, you ask Justice Hoffman, well, what's a prejudice? Well, I'm going to trial and defending a case, I don't know what the plaintiff's exhibits are except that composite correspondence for an entire year or series of years. So when I'm sitting in the Daly Center and all of a sudden Mr. Gant or Mr. prior counsel comes up and he says, well, here, I'm going to introduce this exhibit. Well, I haven't had a chance to look at it, or if I had, I didn't know it was going to be introduced as an exhibit. I don't have a chance to think about the objections. I don't even have a chance to look at the law and say, do I have an objection to this in regards to it? That's what they filed in regards to a subsequent pretrial order, Your Honor. That's prejudice. I can't even know what it is the exhibits are. Now, let me give you more examples of it. You heard well, Justice Rochford, you mentioned the additional claim. That was not in the complaint. This is a matter of sleight of hand. What was in the complaint related to this JVP program. They then decided to file an additional claim after the fact, and after discovery is closed, and raise it in this pretrial memo that relates to a wholly different program at COTC called SLUFR. That was never raised. There was never any discovery. And here, to boot, to top it all off, it would have required expert testimony to define what it is. I get an exhibit that's filled with mathematical algorithms, all sorts of mathematical computations. I was never good at math at school, but I would have still had to find somebody to look at it to tell me what it was. Two days before the trial. The point of the matter is, the trial judge could have barred those claims, could have barred those arguments. Yes, Your Honor. So we're talking about an ultimate sanction here. I want to know what was so egregious here. As I read this record and I look at this, something more had to happen that's coming through these pages. This judge was very angry. Yes, she was, Your Honor. What about? She was angry because what she had done is to set a very ordered way in which the trial would occur. Her docket, as you all know, was very, very, she specifically set dates when she wanted things done. He shows up at the pretrial conference and files a motion to compel, which she found was bad faith, because the motion to compel one was frankly out of bounds. You say she found bad faith, but there's nothing in the order, her written order, that says anything about bad faith regarding the motion to compel. In the transcript of the proceedings, there is an indication that she found a motion to compel in bad faith in regards to that particular set of circumstances because it was intended to do nothing except ask for a continuance of the trial date. Justice Hoffman, you say, well, what? There must be more here. Yes, there was more here. It was her determination that he was totally unready to go to trial in any way, shape, or form in regards to it and had engaged in gamesmanship basically not to do the things that he was supposed to do. He knew that if he asked for a continuance, it would be denied. So instead, he files a motion to compel out of time, which he found in the transcript to be in bad faith, and in her order, it's for the reasons stated in the transcript as to why she was making the decision that she did. So you deny the motion to compel, and you put him on trial a week later. You strike any new theories that he may have in this later filed pretrial memorandum. All those things could have been done, Your Honor, but again. But then she chooses the most drastic sanction we have. She dismisses the cause. But if you look at what it is that the court's role here is to decide whether that was an abuse of discretion, she considered all of the Santiago requirements and first found that there was contumaciousness in regards to the denial, or contumaciousness in regards to the failure to live up to the orders of the court in regards to it. That's the first thing that she found in respect to it, and it was based on her feeling that indeed there was bad faith in regards to what it is that the plaintiffs had been doing here. I don't remember her using the word contumacious. Your Honor, the transcript, I think, clearly indicates that, in her view, that there was no excuse given for the refusals to obey the court orders in regards to it, and that it was a deliberate disobedience in regards to the court orders in respect to it. You know what comes out of this to me? She dismissed the action because she got angry because her docket was going to be disrupted. And that's really what comes out of this. She says this is significant, this is egregious, it results in prejudice of the defendant and resulted in a disruption of the court's docket. You know, every time there's a continuance, the court's docket is disrupted. That is true, Your Honor. But in this particular case, it was more than just, as the court indicates, well, you know, give a short continuance in regards to it. It was a total disregard of her order, her free trial order in respect to it, and then gamesmanship in regards to trying to make it look like it was not. That's why she did what she did. And again, when the court looks at this, if the court were to reverse the circuit court, it's basically telling anyone who just doesn't do what they're supposed to do and has no reason for why they didn't do it. This is what makes this case different from the cases that have reversed the circuit courts in regards to abuse of discretion. In each and every one of those cases, there was a good reason, or at least an arguably good reason why the disobedience occurred, whether it be because counsel was afflicted with a disease, physical disease, mental disease, whether there was miscommunication between counsel in regards to something that should have been done, whether or not there was a secretary who was ill. All of those things are the reasons why there was a reason presented. Here, the court has to confront the fact that you have a recalcitrant plaintiff who not only disobeyed the order completely, not just in part, or there was a good reason for it, but shows up, I'm not ready for trial, I have nothing to show the court. I don't know that there was ever any words saying I'm not ready for trial. There was a request by counsel, and that's in the record, Your Honor, that what they wanted to do is to continue the trial in respect to looking at computer programs at the defendant in regards to it. The motion to compel it, you're saying that's in the motion to compel it? No, this was in the actual transcript of the May hearing in regards to the motion for sanctions, Your Honor, in respect to it. In volume? The motion to compel it is not in the record. Any transcripts? No, it's not in the motion. Regarding that motion to compel, it's not in the record. It is not in the motion to compel, Your Honor. Instead, it is in the transcript on the motion for sanctions in regards to the May 11th hearing in respect to it. And I believe it is in volume. That transcript, for the court's purposes, is in the Supplemental Record on Appeal, Volume 1, and those would be at C-155 to 244, in regards to where Mr. McHugh does indicate that he would seek additional time so that he could conduct this investigation that he wanted to do. I have read that transcript, and I don't recall him asking for a continuance. He was falling before the court saying, you know, that his client shouldn't be punished unless, and there was no indication he was asking for a continuance so that there could be, regarding the computers. I mean, that was done. That issue about the computer was over and done with by the time the motion for sanctions was passed. Your Honor, I don't want to take up the court's time looking for the specifics. I'll look at it. Thank you. In respect to the issue that counsel raises about his client's not knowing of Mr. McHugh's supposed lack of compliance in regards to it, the fact of the matter is that that, too, is complete hogwash in regards to it because, secondly, it was never raised on the motion for sanctions in the first place. No one ever said, well, don't do anything to my client because they didn't know. This was a Johnny-come-lately argument on the motion for reconsideration. The motion to vacate is considered a motion for reconsideration by Illinois courts in regards to it. That's something if, in fact, that is true. We don't know that it is, but that's what their contention is. It could have been raised on the original motion in respect to it. The fact of the matter is that it wasn't, and, therefore, that is waived in regards to this. We objected to it in regards to the motion to vacate and made that observation to the court. But whether the court considers that or not or considered that or not, the fact of the matter is that isn't the basic test that this court will look at to determine whether there was an abuse of discretion. That, again, is the test that this court must look at. It must not replace its own view of what it would do or what any of the members of the justices of this panel would do under similar circumstances because that is not correct. The fact of the matter is you must look at it from the context is, is there any reasonable basis that the court could have done what it is that the court did in this particular case? Even if you feel that perhaps there was something else the court could have done. Of course, sitting in hindsight, on Monday morning we all go back at football games and say, well, we could have done this, we could have done that. Something else would have happened in regards to it. That isn't the basis that this court must review as an appellate panel what it is that Judge Novak did below. Instead, the question is, even if I disagree, can anyone have reasonably said the court, under the circumstances, was reasonable in what it is that she did in regards to this? And the answer to that is, of course, yes. And then just very quickly, in terms of the Santiago requirements, which the court specifically mentioned that she had reviewed in respect to it, she did find that this conduct was complete disobedience of her rules without any reason expressed. Any reason, much less a good reason for this. And that as a consequence, in looking at the rest of it, she did find prejudice and there was prejudice. We would have wound up at trial not knowing anything in regards to what it is that plaintiffs intended to actually present as evidence, as opposed to what pretrial discovery might have been, that there was also a total affront to the court's system of what it is that she considered she needed to do. If she did not do what she did in regards to it, any litigant walking in the door could say, I'm going to get a pass. All I've got to do is to say, well, give me a continuance, Your Honor, in regards to it. This was a 2006 case, Justice Hoffman, in regards to it. At this point, it was five years old. Look, if Szymanowski tells us anything, tells us that when you administer sanctions under 219, the order has to be fair. A fair order is an order to the extent possible, achieves the result required by the rule, and ensures a trial on the merits. That's not this order. This order is the ultimate sanction for the first violation, and I don't know a lot of cases that have affirmed that. This was not the first violation, Your Honor. There's multiple violations of the standing order as well as the pretrial order in regards to this. Not one isolated incident. This is the first sanction that's been administered. The first sanction that was administered in regards to what it is. That is correct, Your Honor, but there is no indication in the case law, and I would respectfully suggest that Szymanowski is not the case to look at. Santiago is. Well, Santiago is before the Illinois Supreme Court right now. But it is currently the law, Your Honor, in regards to it. But even if Szymanowski were to be reviewed in respect to it, it's a totally separate set of circumstances. It involves something that happened before the complaint was even filed in the case, not two days before the trial that had been set six months before in regards to it. And there was a good excuse and there was an indication that there was good faith by the party that was going to be subjected to the sanction in Szymanowski. Completely the opposite of what it is that this court, this trial court, faced in regards to it. Again, what this court is looking at is, in fact, whether there was an abuse of discretion here. The fact of the matter is that there are indeed more than enough reasons to say that what the court did, even if this panel were to say they would have handled it differently to affirm the court. Thank you very much, Justice O'Sullivan. Thank you. Thank you. Rebono? This has to do with the order denying the motion to compel us in the record at C-175. I know the order. That's why I said the order does not say anything about bad faith. Just a couple things. The Santiago and Szymanowski, they both involved different types of violations, different types of conduct. They're both Rule 219 cases. And in both of those decisions, the matters were remanded because there was a lack of actual prejudice found and a lack of a record that showed and demonstrated the actual prejudice. And that's really what we have here, too. The court actually, in this case, did consider, because it must, it's one of the things it must consider, is evidence of contumacious disregard in the case. And the court specifically found that the plaintiff's past performance was not necessarily contumacious and was not necessarily a direct violation of the court order. That's in the record at C-255. There was never even a motion to compel filed for any reason. The plaintiffs had nothing to do with Mr. McHugh's failings. I can't justify Mr. McHugh's failings to this court. You know, it's a rare case indeed when the clients themselves are the ones that violate the discovery. Most of the time it's the lawyers who just don't do it and the clients pay the price. So the fact that the plaintiffs didn't know about this isn't totally relevant. What I'm getting at is we do have cases and authority for where the plaintiffs lie in depositions or the plaintiffs fail to show over, those types of things. And there are dismissals which have come out of that. But here the plaintiffs had no idea and never saw it coming. And there's no finding to the contrary. In terms of, I want to address counsel's statements that we had no idea what was going to happen on May 16th. I mean, the pretrial memorandum is in the record. I think it's undisputed. There's no argument that the witnesses listed weren't on their list. There's no argument made that they weren't all deposed. There's no argument made that they did not know of these exhibits. If there were certain exhibits that were inappropriate, you know, one thing that the trial court could have done is said, look, Mr. McHugh, I still don't think what you filed is appropriate on the exhibits. I'm going to order you to sit down and you're going to pay for every hour that Mr. Ginelli spends working with you on these exhibits. That's one thing the trial court could have done. To just lodge the ultimate sanction without trying to see what was in the order and dig into it, that was an abuse of discretion. Failing to have the order, the right type of order, the right types of findings, does put this court in a position that it can't really tell all the bases upon which. And for the same reasons that the cases were remanded, or there were orders to remand in Szymanowski and in Santiago, we would submit that this case at a minimum should be remanded for an express finding as to what sanctions, if any, should flow from the late disclosure and improper proceedings of Mr. McHugh. Counsel, thank you. Thank you. The case will be taken under advisement.